**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LaChoniquie Evans,<br><br>   Plaintiff,<br><br>v.<br><br>Centurion Managed Care of Arizona LLC, et al.,<br><br>   Defendants. | No. CV-23-00282-PHX-DWL<br><br>**ORDER** |

This is an action under the Fair Labor Standards Act ("FLSA") in which the parties previously reached a settlement and have now asked the Court to approve their settlement on the basis of a redacted version of their settlement agreement that omits the settlement amount.  (Docs. 15, 16.)  As explained below, although the Court has previously engaged in the process of approving settlements in individual FLSA actions, it now joins the growing number of courts that have concluded that judicial approval is neither authorized nor necessary in this circumstance.

## BACKGROUND

In the complaint, Plaintiff asserts individual claims under the FLSA for unpaid overtime and failure to pay minimum wages.  (Doc. 1.)

On June 16, 2023, the parties notified the Court that they had reached a settlement.  (Doc. 13.)

On June 27, 2023, the parties filed a joint motion to approve their settlement and dismiss this action with prejudice.  (Doc. 15.)  As support for the proposition that courts

must "evaluate a proposed FLSA Settlement . . . to ensure the settlement constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions," the parties cite the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), as well as several unpublished decisions from district courts in the District of Arizona applying *Lynn's Food*. (*Id.* at 3.) On the merits, the parties argue that settlement approval should be granted because the settlement "was reached only after the Parties performed an extensive investigation" and "resolves a bona-fide dispute between the parties" regarding "numerous substantive issues, including whether certain preliminary and postliminary activities are compensable under FLSA, whether Defendants' policy of compensating Plaintiff for missed meal breaks was adequate, whether Plaintiff performed off-the-clock and/or overtime work that she reported, whether Defendants had knowledge of unpaid overtime work, and the appropriateness of liquidated damages." (*Id.* at 4.)

Attached to the motion for settlement approval is a redacted version of the settlement agreement. (Doc. 15-1.) Concurrently, the parties filed a joint motion to file portions of the settlement agreement—specifically, the settlement amount—under seal. (Doc. 16.) The parties argue that "[t]his relief would protect the Parties' interest in keeping the financial portion of this settlement private, promote the Parties' agreement to maintain the confidentiality of this information, and advance the public's interest in encouraging settlements, while still allowing public access to all other terms and conditions of the settlement." (*Id.* at 2.)

**ANALYSIS**

The general rule is that courts have no role in approving settlement agreements. *See, e.g., Caplan v. Felheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 835 (3d Cir. 1995) ("Our federal courts have neither the authority nor the resources to review and approve the settlement of every case brought in the federal court system. . . . In what can be termed 'ordinary litigation,' that is, lawsuits brought by one private party against another private party that will not affect the rights of any other persons, settlement of the dispute is solely in the hands of the parties. If the parties can agree to terms, they are free to settle the

litigation at any time, and the court need not and should not get involved.") (citation omitted); *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992) ("Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role."). Instead, if the parties to a pending civil case come to an agreement concerning how to settle it, the plaintiff simply files a notice of voluntary dismissal or a stipulation of dismissal.

The applicable rule in this context is Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure, which provides that "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing" a notice or stipulation of dismissal. *Id.* Such dismissals are "effective upon filing and there is no need for a court order for dismissal to be effectuated." 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 41, at 1270 (2022). *See also Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) ("In ordinary non-class litigation, parties are free to settle their disputes on their own terms, and plaintiffs may voluntarily dismiss their claims without a court order."). Indeed, such a dismissal "strips a court of jurisdiction in the sense that it terminates the case all by itself. There is nothing left to adjudicate." *Commercial Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1077 n.4 (9th Cir. 1999) (citations and internal quotation marks omitted).

There are a few exceptions to the general prohibition against judicial involvement in the approval of settlement agreements. *Caplan*, 68 F.3d at 835 ("There are only certain designated types of suits . . . where settlement of the suit requires court approval."). As noted, the dismissal power under Rule 41(a)(1)(A) is "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66," which deal, respectively, with class actions, derivative actions, actions relating to unincorporated associations, and actions involving receivers. But this case does not involve any of those things.

The final limitation on the dismissal power under Rule 41(a)(1)(A) is that it is "[s]ubject to . . . any applicable federal statutes." The question here, then, is whether the FLSA is one of those federal statutes that requires judicial approval of settlement

agreements. There is, unfortunately, no binding Ninth Circuit law on this question. Although the Ninth Circuit has stated in an unpublished decision that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court," *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015), the rule in the Ninth Circuit is that "[u]npublished dispositions and orders of this Court are not precedent." *See* 9th Cir. R. 36-3(a).

Outside the Ninth Circuit, there is a split of authority on this issue. As the parties correctly note, the Eleventh Circuit has held that "there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees"—either "under the supervision of the Secretary of Labor" or, "in the context of suits brought directly by employees against their employer to recover back wages for FLSA violations," by "present[ing] to the district court a proposed settlement" and asking the court to "enter a stipulated judgment after scrutinizing the settlement for fairness." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) (citing *Lynn's Food*, 679 F.2d at 1352). Similarly, the Second Circuit has held that judicial approval—or, alternatively, approval by the Department of Labor ("DOL")—is required before an individual FLSA claim may be dismissed with prejudice. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("We conclude that . . . Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").[1] In contrast, the Fifth Circuit has held that "parties may privately settle a FLSA claim . . . where there exists a bona fide dispute as to liability." *Martin v. Spring Break '83*

---

[1] Although *Cheeks* remains good law in the Second Circuit, a different panel of the Second Circuit declined to "adopt its reasoning" in the course of holding that judicial approval is not required before a plaintiff in an FLSA action can accept an offer of judgment under Rule 68. *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 398, 411 (2d Cir. 2019). Among other things, the *Mei Xing Yu* court emphasized that "Congress knows how to require judicial approval of settlements and dismissals when it wants to"; that "courts are charged with interpreting the actual text of the laws Congress enacts, and not with rewriting or expanding the scope of the laws in the absence of statutory text, no matter how much one may think it may advance purported remedial goals or represent congressional intent"; and that a judicial approval requirement would amount to "a paternalistic judicial fairness proceeding . . . that Congress does not require and the parties, represented by counsel, do not want." *Id.* at 412-14.

*Prods., L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012) (citation and internal quotation marks omitted).[2]

The law in other circuits appears to be unsettled. For example, the Eighth Circuit has somewhat pointedly declined to say whether judicial approval of FLSA settlement agreements is "proper." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("Here, the district court agreed the parties' proposed wage settlement satisfied Barbee's claims. Regardless of whether that assertion of authority was proper, the district court's authority did not extend beyond concluding the merits settlement was satisfactory."). *See generally* Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L.J. 25, 53-54 (2017) ("The Eleventh and Second Circuits require judicial supervision of FLSA settlement agreements for back wages; the Fifth Circuit carves out a narrow exception to the supervisory requirement; the Fourth, Seventh, Eighth, and Ninth Circuits have not expressly decided the issue, but have (in dicta) acknowledged the requirement of supervision; and the First, Third, Sixth, Tenth, and District of Columbia Circuits having not yet expressly addressed the issue.") (citations omitted).

In circuits where the law on this issue is unsettled, district courts often assume, without discussion, that they must approve FLSA settlements. This Court will confess that it has done the same thing in past cases. However, in recent years, many district courts have given closer scrutiny to this issue and concluded that the FLSA is not one of those "applicable federal statutes" that authorizes (let alone requires) judicial approval of settlement agreements before an action may be dismissed—or, at a minimum, that judicial approval is not required in the case of a settlement arising from a "bona fide" dispute. *See, e.g., Askew v. Inter-Continental Hotels Corp.*, 620 F. Supp. 3d 635, 643 (W.D. Ky. 2022) ("Faced with a statute that doesn't require court approval before dismissal, and a Rule that presumes the opposite, the Court concludes that FLSA is not an 'applicable federal statute'

---

[2] More specifically, the Fifth Circuit "[a]pproved of th[e] rationale" of a district court decision reaching this conclusion. *Martin*, 688 F.3d at 255 (citing *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005)).

under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."); *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, *1 (E.D. Pa. 2022) ("To stay true to Rule 41's language, it is incumbent on courts to avoid throwing up procedural hurdles to settlement. The rule requiring prior court approval of an FLSA settlement is an example of just such a procedural hurdle. The rule has no support in the FLSA's text; it is a judge-made rule that makes litigation slower and more expensive and is at odds with the text of Rule 41."); *Walker v. Marathon Petroleum Corp.*, 2023 WL 4837018, *3 (W.D. Pa. 2023) ("This Court agrees with the analysis in *Alcantara* and *Askew*, and likewise finds nothing in the text of the FLSA (or in any Third Circuit case) that requires or even authorizes court approval for private-party FLSA settlement agreements."); *Jackson v. Dovenmuehle Mortgage, Inc.*, 2023 WL 4304871, *1 (E.D. Wisc. 2023) ("The Seventh Circuit has never explicitly held that court approval of individual FLSA settlement agreements is required, and the Court will not, in this case, self-impose or adopt such a requirement where the FLSA does not explicitly require it.") (citations and internal quotation marks omitted); *Martinez v. Back Bone Bullies Ltd.*, 2022 WL 782782, *12 (D. Colo. 2022) ("[P]arties to a bona fide FLSA claim may resolve their dispute via a private settlement agreement, with such agreement being legally effective regardless of submission to or approval by the trial court."). *See generally Anderson v. Team Prior, Inc.*, 2022 WL 16531690, *5 n.4 (D. Me. 2022) ("[A] growing number of federal courts are rejecting [Eleventh Circuit precedent] and holding that court approval of private FLSA settlements is not necessary.").

Upon reflection, the Court finds these cases persuasive. Most important, nothing in the text of the FLSA indicates that judicial approval of settlement agreements is required and other features of the statutory text strongly suggest that Congress did not intend to create such a requirement. As one court put it:

> [T]he FLSA itself contains no language requiring judicial approval of settlement agreements. The statute mentions the court only in the very different context of attorney fees and costs. Although the statute expressly cites the [DOL's] supervisory role and the employee's waivers, it doesn't condition the validity of an employee's dismissal on the court's approval of an underlying settlement.

*Askew*, 620 F. Supp. 3d at 639 (citations omitted). Similarly, as another court explained:

- 6 -

> The FLSA includes a private right of action against any "employer who violates" the overtime and minimum wage provisions of the statute. The statute permits the Secretary of Labor to file a case and administer a settlement. Neither those provisions nor any other part of the FLSA requires a court to approve a settlement between an individual plaintiff and an employer . . . . A court should not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply. That is particularly true where Congress has shown that it knows how to include the relevant language. When Congress adopted the FLSA in 1938, Congress had included language in other statutes that required court approval of a settlement. . . . The fact that Congress knew how to include provisions requiring approval of settlements, but did not include that language in the FLSA, indicates that Congress did not intend to require courts to approve FLSA settlements.

*Alcantara*, 2022 WL 2703610 at *2-3 (citations omitted).

Notwithstanding this textual black hole, some courts have suggested that the Supreme Court's decisions in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946), support interpreting the FLSA as implicitly requiring judicial approval of all settlement agreements. *See, e.g.*, *Cheeks*, 796 F.3d at 202. The Court respectfully disagrees. *O'Neil* held that when there is no dispute that liquidated damages are due under the FLSA, a waiver of those liquidated damages will not be enforceable. 324 U.S. at 704. However, the Court drew a distinction between a "release [that] was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act" and "a mere waiver of [an undisputed] right to liquidated damages." *Id.* at 703. The Court also emphasized that it was not deciding whether the FLSA limited "the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." *Id.* at 714. Similarly, *Gangi* involved a waiver agreement where there was no dispute as to the amount of compensation and liquidated damages owed. 328 U.S. at 111-12. Although the Court held that such a waiver would not be enforceable in future litigation where the only bona fide dispute involved FLSA coverage, it made clear that "we [do not]

- 7 -

need to consider here the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Id.* at 114-15. In short, neither case addressed the question presented here, which is whether represented parties embroiled in FLSA litigation, who have bona fide disputes over such matters as the number of hours worked, can reach a compromise and then stipulate to dismissal of the action without judicial approval of their settlement. *See, e.g.*, *Mei Xing Yu.*, 944 F.3d at 405 ("In the intervening seven decades since *Gangi*, the Supreme Court has never resolved these lingering questions about when and how employees can release their FLSA rights. . . . Notably absent from any of these Supreme Court interpretations of the FLSA is any discussion on whether a settlement or dismissal of an action to vindicate FLSA rights under § 216(b) is conditioned on court approval."); *Askew*, 620 F. Supp. 3d at 642 ("[N]either *Brooklyn Savings* nor *Gangi* compel the conclusion that settling a FLSA case requires court approval.").[3]

Some courts have also relied on "the unique policy considerations underlying the FLSA" as the basis for concluding that settlements reached during FLSA litigation require judicial approval. *See, e.g.*, *Cheeks*, 796 F.3d at 206. The Court again respectfully disagrees. As the district court cogently put it in *Alcantara*: "Congressional intent is discerned primarily from the statutory text. And policy cannot overcome the text of a statute." 2022 WL 2703610 at *3-4 (citations and internal quotation marks omitted). At

---

[3] A footnote in *Gangi* stated that if there had been a lawsuit filed with an "agreed judgment," such that the issues were pleaded and the judgment submitted "to judicial scrutiny," the outcome might have been different. 328 U.S. at 113 n.8. This is a far cry from establishing that submission to judicial scrutiny is the only way (aside from DOL supervision) for parties' FLSA settlements to be enforceable, and an even farther cry from establishing that parties to FLSA lawsuits cannot agree to stop litigating without submitting their settlements to judicial scrutiny. In the many decades since *Gangi* was decided, the Supreme Court has never suggested that such a requirement exists. To the contrary, several Justices recently provided the following illustration of "how a collective FLSA action seeking damages unfolds": "A plaintiff . . . sues under § 216(b) on behalf of both herself and others. . . . Now introduce a settlement offer into the picture: Assume that before the court finally decides whether to permit a collective action, the defendant proposes to pay Smith the value of her individual claim in exchange for her abandonment of the entire litigation. *If Smith agrees, of course, all is over; like any plaintiff, she can assent to a settlement ending her suit.*" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 83-84 (2013) (Kagan, J., dissenting) (emphasis added).

any rate, to the extent policy considerations might be relevant here, the overarching policy consideration is that "the FLSA is to be construed liberally in favor of employees." *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 889 (9th Cir. 2017) (cleaned up).  At least in cases like this one, where the parties have been represented by counsel from the outset and have avowed that their settlement arises from various bona fide disputes, a construction that forces employees to pay heightened litigation fees to tee up a motion for post-settlement judicial approval is not, on balance, "in favor of" employees. *See generally Alcantara*, 2022 WL 2703610 at *4 ("[S]everal [policy reasons] weigh against requiring courts to approve FLSA settlements.  First, the requirement of court approval slows the resolution of FLSA settlements and, by extension, the payment of wages to plaintiffs.  Second, the requirement requires lawyers to expend more time and to seek higher fees to resolve small cases.  Where possible, the law should avoid forcing lawyers to do work that is disproportionate to the size of the case. . . .  [Finally], a requirement of court approval could force a risk-averse employer to demand employees file suit before settling, rather than settling pre-suit.  That would have the impact of adding transaction costs to the settlement and clogging court dockets.  All of these concerns augur against a prudential rule that requires judicial approval of FLSA settlements between individual parties."). Indeed, if an employee were forced to continue litigating due to judicial rejection of a settlement agreement, that employee could later face a less favorable settlement offer via a Rule 68 offer of judgment—an offer that would not be subject to judicial oversight, *Kubiak v. Cnty. of Ravalli*, 32 F.4th 1182, 1187 (9th Cir. 2022)—along with the possibility that rejecting the offer could result in paying the employer's post-offer costs. *See, e.g.*, *id.* ("[A] plaintiff who receives a Rule 68 offer is in a difficult position . . . ."). "In short, settlements rather than litigation will serve the interests of plaintiffs as well as defendants." *Marek v. Chesny*, 473 U.S. 1, 10 (1985).  *See also Martinez*, 2022 WL 782782 at *12 ("[M]andatory judicial oversight of every FLSA settlement unduly burdens everyone involved in the process: courts, attorneys, and litigants.").

As for how to proceed in light of these conclusions, one option might be to deny

both of the pending motions and order the Clerk to terminate this action in 60 days (unless a party requests reinstatement in the meantime), as is the Court's standard practice upon receiving a notice of settlement. The rationale for that approach would be that (1) the request for settlement approval fails on the merits, because the Court lacks authority to provide the sort of approval the parties are seeking; (2) the motion to seal is moot in light of that determination; and (3) there is no reason for the case to remain pending on the docket in light of the fact that the parties have entered into a settlement (which, contrary to the parties' understanding, does not require judicial approval to become valid). However, the Court also recognizes that the parties may wish to be further heard on the judicial-approval issue. Because district courts in the District of Arizona (including this Court) have routinely and uncritically engaged in the settlement-approval process in past FLSA cases, it is understandable why the parties may have believed that a reference to *Lynn's Food* would be sufficient to establish the propriety and necessity of judicial review here. Thus, to the extent the parties wish to attempt to make a more comprehensive showing on that issue (and attempt to demonstrate why the conclusions reached in this order are incorrect), they are free to do so and the Court will consider their arguments with an open mind.

…
…
…
…
…
…
…
…
…
…
…

Accordingly,

**IT IS ORDERED** that:

1. The parties' joint motion to approve settlement and dismiss with prejudice (Doc. 15) is **denied without prejudice**.

2. The parties' joint motion to seal (Doc. 16) is **denied as moot**.

3. Within 14 days of the issuance of this order, the parties shall file one of the following: (1) a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii); (2) a renewed motion for approval of their settlement; or (3) a status report otherwise informing the Court as to the status of this action.

Dated this 9th day of August, 2023.

Dominic W. Lanza
United States District Judge